# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 17-0786V
### (not to be published)

* * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| VALISHA CARRINGTON, | * | Special Master Corcoran |
| | * | |
| | * | Filed: October 18, 2018 |
| Petitioner, | * | |
| v. | * | |
| | * | Dismissal of Petition; Vaccine |
| SECRETARY OF HEALTH | * | Act; Denial Without Hearing; Failure |
| AND HUMAN SERVICES, | * | to Prosecute. |
| | * | |
| Respondent. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

*Valisha Carrington*, pro se, Round Rock, TX.

*Christine M. Becer*, U.S. Dep't of Justice, Washington, D.C. for Respondent.

## DECISION DISMISSING CASE FOR INSUFFICIENT PROOF AND FAILURE TO PROSECUTE[1]

On June 13, 2017, Valisha Carrington filed a petition seeking compensation under the National Vaccine Injury Compensation Program.[2] In it, Ms. Carrington alleged that she suffered from Guillain-Barré syndrome ("GBS"), acute inflammatory demyelinating polyneuropathy ("AIDP"), and/or chronic inflammatory demyelinating polyneuropathy ("CIDP"), as a result of receiving the Flumist form of the influenza vaccine on February 23, 2016. *See* Petition ("Pet.") (ECF No. 1) at 1-2; Supplemental Petition ("Supp. Pet.") (ECF No. 8-1) at 1-2.

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012)). **This means that the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

Following the filing of the Petition, the case proceeded in an overall efficient matter. Petitioner's prior counsel filed the majority of Petitioner's medical records by June 15, 2017, and the parties filed the Joint Statement of Completion that same day (though it was later determined that Respondent required additional records to assess the claim). *See* ECF Nos. 10, 14. Respondent thereafter filed his Rule 4(c) Report on January 5, 2018, contesting Petitioner's right to an entitlement award (ECF No. 15).[3]

On January 18, 2018, I held an initial status conference to discuss my views of the case in light of the issues raised in the Rule 4(c) Report. As noted above, the Petition alleged that Ms. Carrington suffered from GBS, AIDP, and/or CIDP as a result of receiving the Flumist vaccine. However, Respondent's Rule 4(c) Report highlighted some inconsistencies in the medical records relating to the evidentiary support for such an injury. *See* Scheduling Order, dated Jan. 19, 2018 (ECF No. 17). Based on my own assessment of the record, I explained to Petitioner that CIDP appeared to be the better supported diagnosis, though I allowed for the possibility that an expert opinion *could* shed more light on the diagnosis dispute. *Id.* at 1. Nevertheless, at the conclusion of the conference I expressed concern relating to the claim's overall viability (given the questions about diagnosis, Petitioner's preexisting health problems, and the possibility of conversion disorder as an alternate explanation for her symptoms). *Id.* at 1-2. I thus encouraged Petitioner to be mindful of the above if she intended to proceed with obtaining an expert opinion to support her claim. *Id.* at 1. I thereafter directed Petitioner to file a status report on or before March 23, 2018, indicating how she wished to proceed moving forward. *Id.* at 2.

On April 4, 2018, I held an additional status conference with the parties given Petitioner's desire to proceed to the expert stage. During the conference, Petitioner's prior counsel informed me that he had retained Dr. Marcel Kinsbourne in hopes that he could offer an expert opinion in the matter. *See* Scheduling Order, dated Apr. 4, 2018 (ECF No. 20) ("April 4th Order"). According to counsel, Dr. Kinsbourne believed Petitioner had been misdiagnosed, and wanted to evaluate other possible explanations for her symptoms (including narcolepsy, conversion disorder, or small fiber neuropathy), none of which were alleged in the Petition (nor supported strongly by the filed medical records for that matter).

In response, I reiterated my view that the claim likely faced viability problems given the lack of record support for the new diagnoses offered. April 4th Order at 1-2. Program precedent strongly favors the contemporaneous medical records when assessing possible diagnoses (as opposed to subsequent opinions contradicting earlier-in-time records). *Id.* Otherwise, given the lack of Program support for a vaccine-induced injury resulting in narcolepsy, I cautioned Petitioner that only her newly-alleged small fiber neuropathy diagnosis *might* be viable (though it too appeared unsupported by the medical record at that time). *Id.* at 2.

---

[3] An additional set of neurology records were filed on January 16, 2018. *See* ECF No. 16.

At the conclusion of the April 4th conference, I set a deadline of June 22, 2018, for Petitioner to file an expert report in support of her claim. *See* Scheduling Order, dated Apr. 4, 2018 (ECF No. 20). Thereafter, prior counsel filed a status report on June 20, 2018, indicating that Petitioner had been unable to secure medical expert support for any of the alternative diagnoses offered in the April 4th conference. *See* Status Report, filed June 20, 2018 (ECF No. 21). Counsel nevertheless requested that Petitioner be given even more time to visit her neurologist or other specialist (in order to try to obtain one of the aforementioned diagnoses). *Id.* at 2. He also indicated a desire to withdraw should I deny any further extensions of time, and requested a status conference to discuss the matter further. *Id.*

I held a final status conference on July 12, 2018. During that conference, I again reiterated to Petitioner my concerns regarding the claim's reasonable basis (given counsel's inability to obtain an expert who could offer a supportive opinion regarding the injuries alleged in the Petition, as well as Petitioner's unsuccessful attempts to procure an alternative diagnosis <u>over one year</u> after the case's filing). *See* Scheduling Order, dated July 12, 2018 (ECF No. 22). In light of the above, I set a deadline of September 14, 2018, for Petitioner to show cause why her claim should not be dismissed for failure to offer a cognizable medical theory, supported by the medical record, in support of a vaccine-induced injury. *Id.* at 2. I similarly directed former counsel to file a motion to withdraw and a fees application on or before July 31, 2018. *Id.*

Prior counsel filed his motion to withdraw and fees application on July 13, 2018, and July 16, 2018, respectively (ECF Nos. 23-26). I granted counsel's motion to withdraw on August 6, 2018 (ECF No. 29).[4] Thereafter, Petitioner entirely missed her show cause deadline set for September 14, 2018. Thus, on September 21, 2018, I ordered Petitioner to file the overdue response immediately. *See* Order, dated Sept. 21, 2018 (ECF No. 34). After Petitioner ignored that deadline as well, I directed her to again show cause immediately why the case should not be dismissed for failure to comply with my orders. *See* Order to Show Cause, dated Oct. 1, 2018 (ECF No. 35). Despite this Order, Petitioner still has not filed a brief in support of her claim, nor filed a response of any kind to my Show Cause Order.

## Analysis

To receive compensation under the Vaccine Program, a petitioner must prove either (1) that he suffered a "Table Injury" – i.e., an injury falling within the Vaccine Injury Table – corresponding to one of her vaccinations, or (2) that he suffered an injury that was actually caused by a vaccine. *See* Sections 13(a)(1)(A) and 11(c)(1). An examination of the record, however, does not uncover preponderant evidence that Petitioner suffered a Table injury. Accordingly, Petitioner seeks to establish entitlement via a causation-in-fact, non-Table claim - meaning she must meet the test for such a claim set forth by the Federal Circuit in *Althen v. Sec'y of Health & Human*

---

[4] The fees request remains pending. *See* ECF Nos. 23, 25.

3

*Servs.*, 418 F.3d 1274 (Fed. Cir. 2005). Petitioner has had several chances to offer evidence that would support her claim, but she has failed to submit such evidence into the record. Overall, the record does not contain persuasive evidence indicating that Petitioner's alleged injury was vaccine-caused.

As noted above, Petitioner initially alleged that the Flumist form of the flu vaccine caused her to develop some form of peripheral neuropathy (i.e. GBS/CIDP/AIDP). Pet. at 1. As the case progressed, Petitioner contended (in the face of a record that only partially supported a CIDP diagnosis) that she was likely misdiagnosed, and offered new explanations (including narcolepsy or small fiber neuropathy), for her purported vaccine-caused injury.

Based on my review of Petitioner's submissions, it appears that the record does contain some uncertainty concerning her proper diagnosis following vaccine administration. Various treatment records around the time of vaccination suggest that Petitioner presented to treaters with complaints (including paresthesia, numbness, and weakness) near the end of March 2016. However, those same treaters concluded that the relevant medical testing could not explain her adverse symptoms. *See, e.g.*, Ex. 3 at 44-45 (March 28, 2016 hospitalization record noting preexisting concern/diagnosis of narcolepsy), 53 (March 28, 2016 neurology consult noting that GBS/AIDP should be considered, though reflexes were normal and intact), 46-49 (April 1, 2016 psychiatric consult noting GBS would be atypical as Petitioner had retained reflexes), 81-82 (April 1, 2016 neurology consult noting Petitioner's case was odd/atypical for AIDP due to normal MRI and CSF analysis). Subsequent treaters reached similar conclusions. *See, e.g.*, Ex. 5 at 52, 55 (January 3, 2017 hospital record noting March 2016 GBS/MS workup was unremarkable, resulted in normal MRI and lumbar puncture, and overall etiology was "not clear"), 68 (January 3, 2017 neurology consult listing CIDP as a differential, but noting presentation would be atypical given intact reflexes), 90 (January 11, 2017 neurology consult indicating suspected CIDP due to EBV infection, but noting reflexes were intact and concern for "embellished" symptoms); Ex. 7 at 3-4 (January 26, 2017 neurology consult noting Petitioner "does not have" GBS/CIDP).

Thus, it is clear that Petitioner's treaters never firmly concluded (after much testing) that her symptoms were compatible with a neuropathic injury (whether GBS, CIDP, or small fiber neuropathy). On the present record (and absent a medical expert opinion), Petitioner is not able to establish that she suffered a neuropathic injury following vaccination.

The medical record also includes some support for a diagnosis of narcolepsy. *See, e.g.*, Ex. 2 at 6-7 (March 21, 2016 notation for narcolepsy with cataplexy given breathing troubles and increased sleepiness upon exam); Ex. 3 at 44-45 (March 28, 2016 hospital record indicating past diagnosis and sleep study for narcolepsy). However, no treaters ultimately so diagnosed Petitioner. And Ms. Carrington was unable to obtain a newer narcolepsy diagnosis from some other expert -

4

an effort which (given its undertaking over six months after the claim's filing) smacks more of desperation to save the claim than a reasonable inquiry into the nature of her alleged injuries.[5]

But even if narcolepsy were an alternative credible diagnosis, the contemporaneous medical records filed in the case do not support the contention that Petitioner's receipt of the Flumist vaccine caused it. At best, records from Petitioner's March 2016 hospitalization include a glancing reference to receipt of the Flumist vaccine in her health history. *See, e.g.*, Ex. 3 at 53. Roughly nine months following vaccine administration, notes in the health history from a January 2017 record state that Petitioner's current allergy list included the "influenza vaccine." *See* Ex. 5 at 62 (January 2, 2017 hospitalization record concerning visit for extremity weakness); Ex. 7 at 2. Admittedly, the health history taken during that visit (referring to her previous symptoms in March 2016) notes that "the initial insult was felt to be a flu vaccine." Ex. 5 at 62. However, it appears more likely that Petitioner reported this history to the treating physician (as that same record offers no explanation or opinion regarding any correlation between the vaccination and any symptoms she was experiencing at that time or in March 2016). *See id.* Thus, at best, the records suggest that Petitioner reported concerns for a vaccine-induced injury—not that treaters offered the view *causally* connecting vaccination with any subsequent symptoms she experienced. *See, e.g.*, Ex. 3 at 45 (March 28, 2016 consult noting patient attributed weakness to flu vaccine); 46 (March 28, 2016 consult noting patient reported concern for allergy to Flumist), 50 (noting the same); Ex. 2 at 6 (March 21, 2016, visit noting patient attributed breathing problems and sleepiness to Flumist).[6]

Moreover, and independent of the above substantive and objective deficiencies, Petitioner's claim should also be dismissed due to her repeated failures to comply with my orders. A petitioner's inaction and failure to abide by court orders risks dismissal of a claim. *Tsekouras v. Sec'y of Health & Human Servs.*, 26 Cl. Ct. 439 (1992), *aff'd per curiam*, 991 F.2d 810 (Fed. Cir. 1993); *Sapharas v. Sec'y of Health & Human Servs.*, 35 Fed. Cl. 503 (1996); Vaccine Rule 21(b). Petitioner ignored a deadline set by an Order I issued, and then ignored a second warning that the case would soon be dismissed if she again failed to respond. In each instance I provided her with

---

[5] The record more strongly supports the conclusion that Ms. Carrington's symptoms are attributable to conversion disorder. *See* Ex. 3 at 46-49 (March 31, 2016 psychiatry consult noting concern for psychological component related to weakness presentation), 81 (April 1, 2016 psychiatric consult noting suspected conversion disorder is "strong possibility"); Ex. 4 at 23 (April 6, 2016 psychiatric note concluding Petitioner had generalized anxiety disorder); 5 at 68 (January 2, 2017 neurology consult again indicating possible psychological component to symptoms). Of course, if this is true, then Petitioner's claims that the Flumist vaccine harmed her are even more baseless. *See, e.g., Pless v. Sec'y of Health & Human Servs.*, No. 16-271, 2017 WL 4174077, at * 5 (Fed. Cl. Spec. Mstr. Aug. 25, 2017) (conditions without a physical basis, such as somatoform or conversion disorder, are not compensable under the Vaccine Act) (citing *Lasnetski v. Sec'y of Health & Human Servs.*, 696 F. App'x 497 (Fed. Cir. 2017)), *aff'd*, slip op. No. 16-271V (Fed. Cl. Jan. 4, 2018)).

[6] I have also previously determined that the Flumist vaccine (as compared with other formulations) cannot be reliably deemed causal of narcolepsy. *See D'Toile v. Sec'y of Health & Human Servs.*, No. 15-085V, 2016 WL 7664475 (Fed. Cl. Spec. Mstr. Nov. 28, 2016) (denying compensation for Flumist/narcolepsy injury due in part to insufficiencies in the medical literature filed in support), *mot. for review den'd*, 132 Fed. Cl. 421 (2017), *aff'd*, 726 F. App'x 809 (Fed. Cir. 2018).

5

more than enough time to contact my chambers or file some kind of status report. She was therefore on ample notice of the risks she took not taking my orders seriously.

Under the Vaccine Act, a petitioner may not receive a Vaccine Program award based solely on his claims alone. Rather, the petition must be supported by either medical records or by the opinion of a competent physician. Section 13(a)(1). In this case, there is insufficient evidence in the record for Petitioner to meet her burden of proof. Petitioner's claim therefore cannot succeed and must be dismissed. Section 11(c)(1)(A).

**Thus, this case is dismissed for insufficient proof and failure to prosecute. The Clerk shall enter judgment accordingly.[7]**

IT IS SO ORDERED.

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[7] Pursuant to Vaccine Rule 11(a), the parties may expedite judgment by filing a joint notice renouncing their right to seek review.