REISSUED FOR PUBLICATION
JAN 2 2019
OSM
U.S. COURT OF FEDERAL CLAIMS

# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 17-786V
### (not to be published)

```
* * * * * * * * * * * * * * * * * * * * * * * * *
VALISHA CARRINGTON,                         *
                                            *       Special Master Corcoran
                                            *
                   Petitioner,              *       Filed:  November 16, 2018
                                            *
        v.                                  *       Decision; Attorney's Fees and Costs;
                                            *       Reasonable Basis.
SECRETARY OF HEALTH                         *
AND HUMAN SERVICES,                         *
                                            *
                   Respondent.              *
                                            *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

*Valisha Carrington, pro se*, Round Rock, TX.

*Christine Mary Becer*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## FINAL ATTORNEY'S FEES AND COSTS DECISION[1]

On June 13, 2017, Valisha Carrington filed a Petition seeking compensation under the National Vaccine Injury Compensation Program.[2] In it, Ms. Carrington alleged that she suffered from Guillain-Barré syndrome ("GBS"), acute inflammatory demyelinating polyneuropathy ("AIDP"), and/or chronic inflammatory demyelinating polyneuropathy ("CIDP"), as a result of receiving the Flumist form of the influenza vaccine on February 23, 2016. *See* Petition ("Pet.") (ECF No. 1) at 1-2; Supplemental Petition ("Supp. Pet.") (ECF No. 8-1) at 1-2. The case was dismissed on October 18, 2018 (ECF No. 36), for insufficient proof and failure to prosecute.

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

Petitioner's prior counsel (who withdrew from the case before its dismissal) filed a motion requesting attorney's fees and costs, on July 13, 2018. *See generally* Motion for Attorney's Fees ("Fees App.") (ECF No. 23); *see also* Supplemental Motion for Attorney Fees, dated July 16, 2018 (ECF No. 25) ("Supp. Fees App."). Counsel requests reimbursement of attorney's fees in the amount of $21,705.00 (representing $17,969.00 in attorney's fees, plus $3,736.00 in costs). Fees App. at 2-3.

For the reasons stated below, I hereby **GRANT IN PART** prior counsel's request, awarding attorney's fees and costs in the total amount of **$21,305.00** (representing $17,969.00 in attorney's fees, plus $3,336.00 in costs).

## Procedural History

This action has been pending for just over one year. Petitioner's counsel, Mr. Michael Baseluos filed the Petition on June 13, 2017 (ECF No. 1). Following the filing of the Petition, the case proceeded in an overall efficient matter. Petitioner's prior counsel filed the majority of Petitioner's medical records by June 15, 2017, and the parties filed the Joint Statement of Completion that same day (though it was later determined that additional records were needed to further assess the claim). *See* ECF No. 16. Respondent thereafter filed his Rule 4(c) Report on January 5, 2018, contesting Petitioner's right to an entitlement award (ECF No. 15).

On January 18, 2018, I held an initial status conference to discuss my views of the case in light of the issues raised in the Rule 4(c) Report. As noted above, the Petition alleged that Ms. Carrington suffered from GBS, AIDP, and/or CIDP as a result of receiving the Flumist vaccine. However, Respondent's Rule 4(c) Report highlighted some inconsistencies in the medical records relating to the evidentiary support for Petitioner's proper diagnosis. *See* Scheduling Order, dated Jan. 19, 2018 (ECF No. 17). Based on my own assessment of the record, I explained to Petitioner that CIDP appeared to be the better supported diagnosis, though I allowed for the possibility that an expert opinion *could* shed more light on the diagnosis dispute. *Id.* at 1. Nevertheless, at the conclusion of the conference I expressed concern relating to the claim's overall viability (given the questions about diagnosis, Petitioner's preexisting health problems, and the possibility of conversion disorder as an alternate explanation for her symptoms). *Id.* at 1-2. I thus encouraged Petitioner to be mindful of the above if she intended to proceed with obtaining an expert opinion to support her claim. *Id.* at 1.

On April 4, 2018, I held an additional status conference with the parties after Petitioner expressed the desire to proceed to the expert stage. During the conference, Petitioner's prior counsel informed me that he had retained Dr. Marcel Kinsbourne in hopes that he could offer an

expert opinion in the matter. *See* Scheduling Order, dated Apr. 4, 2018 (ECF No. 20) ("April 4th Order"). According to counsel, Dr. Kinsbourne believed Petitioner had been misdiagnosed, and wanted to evaluate other possible explanations for her symptoms (including narcolepsy, conversion disorder, or small fiber neuropathy).

In response, I reiterated my concerns regarding the claim's viability given the weak record support for the new diagnoses offered. April 4th Order at 1-2. Program precedent strongly favors the contemporaneous medical records when assessing possible diagnoses (as opposed to subsequent opinions contradicting earlier-in-time records). *Id.* Otherwise, given the lack of Program support for a vaccine-induced injury resulting in narcolepsy, I cautioned Petitioner that only her newly-alleged small fiber neuropathy diagnosis *might* be viable (though it too appeared unsupported by the medical record at that time). *Id.* at 2. Despite my concerns, I agreed to allow Petitioner time to further investigate the newly alleged diagnoses (and obtain an expert opinion in support). *See* Scheduling Order, dated Apr. 4, 2018 (ECF No. 20).

I held a final status conference on July 12, 2018. During that conference, prior counsel expressed an intent to withdraw given his inability to obtain an expert who could offer a supportive opinion regarding the injuries alleged in the Petition, as well as Petitioner's unsuccessful attempts to procure an alternative diagnosis. *See* Scheduling Order, dated July 12, 2018 (ECF No. 22). Prior counsel filed his motion to withdraw and fees application on July 13, 2018, and July 16, 2018, respectively (ECF Nos. 23-26). Thereafter, I granted counsel's motion to withdraw on August 6, 2018 (ECF No. 29). The case was subsequently dismissed on October 18, 2018, for insufficient proof and failure to prosecute. *See* Decision, dated Oct. 18, 2018 (ECF No. 36).

### Fees Request

According to the billing record submitted with the fees request, Petitioner's counsel began reviewing the case file in March 2016, and immediately worked to obtain Petitioner's medical records thereafter. *See, e.g.*, Ex. 1 to Fees App. at 2 (March 29, 2016 entry noting telephone conference with client), 2 (October 4, 2016 entry noting email regarding obtaining medical records). Counsel conducted various tasks related to case preparation throughout the remainder of 2016 (including participating in email communication with Petitioner, discussing missing materials and records, and monitoring file updates). *See id.* at 2-3.

The same record reveals that prior counsel began reviewing medical records in early December 2016. *See* Ex. 1 to Fees App. at 2-3 (ECF No. 23-1). Based upon my review, it appears that counsel completed multiple hours of work pertaining to record review prior to filing the claim, but filed the majority of Petitioner's records on June 15, 2017 (two days following the filing of the Petition). *See* ECF Nos. 8 & 9. After the filing of records, the parties filed the Joint Statement of Completion on June 15, 2017 (ECF No. 10), followed by the Rule 4(c) Report on January 1, 2018

3

(ECF No. 15). The record also reveals that counsel filed additional medical records thereafter in mid-January 2018. *See* ECF No. 16 (pertaining to additional neurology visits).

In the pending fees request, prior counsel asks that he be compensated at a rate of $265 per hour for work performed in 2016, with increases to $275 per hour for work completed in 2017, and $295 per hour for work completed in 2018. *See generally* Ex. 1 to Fees App. For paralegal time expended on the matter, Petitioner requests a rate of $125 per hour for work completed in 2016-2018. *Id.* Pursuant to the General Order No. 9 statement, Petitioner maintains that she has incurred no personal costs related to this matter. Fees App. at 2. The fees application also requests reimbursement for litigation costs incurred (representing medical record requests, the filing fee, mailing and postage, and a medical review by Dr. Marcel Kinsbourne). *Id.*

Respondent reacted to the fees motion on July 27, 2018, stating that he is satisfied that the statutory requirements for an award of attorney's fees and costs are met in this case, but deferring to my discretion the determination of the amount (if any) to be awarded. *See* Response, dated July 27, 2018 (ECF No. 28) ("Response").[3]

The fees request remained pending for roughly three months following counsel's withdrawal (until the case was dismissed). Prior counsel filed an application for standing on August 27, 2018 (ECF No. 33), requesting that I allow him to intervene in the matter for the limited purpose of offering additional support (pertaining to reasonable basis) for his fees motion. I granted counsel's motion on October 19, 2018 (ECF No. 37), and directed both parties to file any additional fee-related materials on or before November 2, 2018.

On October 29, 2018, prior counsel filed a brief setting forth his views regarding the claim's reasonable basis. According to the brief, prior counsel maintains that he diligently reviewed Petitioner's medical records and determined that the evidence he possessed supported a filing of the claim. He argues that Petitioner's claim had reasonable basis due to assertions from treating physicians concerning the flu vaccine and its possible relationship to the documented neuropathic symptoms Petitioner experienced (whether GBS, CIDP, or AIDP) close-in-time to vaccine administration. *See* Brief, filed Oct. 29, 2018 (ECF No. 38) ("Brief") at 2-9 (citing, for example, Ex. 3 at 1-2, 50-54; Ex. 5 at 61-68, 86, 97, 127, 413, 429; Ex. 4 at 18-25), 13, 16. Based on these treater-supported assertions, counsel argues that further investigation was needed to

---

[3] Apart from the above, Respondent's brief in response to Petitioner's fee application did challenge Petitioner's request for an award on an interim basis (as the original fees motion was filed prior to the conclusion of the case). *See* Response at 1-3. I find this argument moot, however, in light of the case's dismissal. Respondent offered no additional objection regarding a final fees award despite being given an opportunity to do so.

determine the causal nature of the vaccine as it related to Petitioner's onset of symptoms. *Id.* at 9.[4] Although prior counsel acknowledges that the medical records are somewhat equivocal regarding the proper diagnosis of Petitioner's symptoms, he maintains that the claim's ultimate deficiencies came to light only after obtaining additional medical records and speaking directly with an opining expert physician. *Id.* at 9-10, 11-12; *see also* Ex. 7. Following medical expert review, counsel maintains that he acted expeditiously in attempting to aid Petitioner in procuring an alternative diagnosis (i.e. small fiber neuropathy, narcolepsy, or conversion disorder), and appropriately withdrew from the case once it was determined such a diagnosis could not be obtained. Brief at 12, 15. Respondent did not file a response. The matter is thus ripe for disposition.

## Analysis

### I.     Reasonable Basis Standard

I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis"[5] sufficient for a fees award. *See, e.g., Allicock v. Sec'y of Health & Human Servs.*, No. 15-485V, 2016 WL 3571906, at \*4-5 (Fed. Cl. Spec. Mstr. May 26, 2016), *aff'd on other grounds*, 128 Fed. Cl. 724 (2016); *Gonzalez v. Sec'y of Health & Human Servs.*, No. 14-1072V, 2015 WL 10435023, at \*5-6 (Fed. Cl. Spec. Mstr. Nov. 10, 2015). In short, a petitioner can receive a fees award even if his claim fails, but to do so he must demonstrate the claim's reasonable basis through some objective evidentiary showing and in light of the "totality of the circumstances," including all facts relevant to the to the case. *See Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 303, 303 (2011)).

The nature and extent of an attorney's investigation into the claim's underpinnings, both before and after filing, shed some light on the extent of objective evidence supporting a claim (and <u>when</u> that evidence was, or could have been, unearthed). *See Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at \*6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014); *Di Roma v. Sec'y of Health & Human Servs.*, No. 90–3277V, 1993 WL 496981, at \*2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993) (citing *Lamb v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 255, 258–59 (1991)).

---

[4] Prior counsel also asserts that he conducted research regarding Petitioner's symptoms which confirmed his suspicions. He submitted portions of this research (including a sample case report) with his reasonable basis brief. *See generally* Ex. 1 to Brief at 1-18; *see also* Brief at 5, 7, 16.

[5] Although good faith is one of the two criteria that an unsuccessful petitioner requesting a fees award must satisfy, it is an easily-met one – and Respondent does not appear to question it in this case. *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996) (in the absence of evidence of bad faith, special master was justified in presuming the existence of good faith).

Program attorneys are expected to conduct a reasonable pre-filing investigation—including an evaluation of the factual basis for the claim at minimum. *See Allicock*, 2016 WL 3571906, at \*4; *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at \*7 (Fed. Cl. Spec. Mstr. Nov. 30, 2007) ("[a] reasonable pre-filing inquiry involves an investigation of the factual basis for a Program claim *or* the medical support for a vaccine petition") (emphasis added)).

The Court of Federal Claims recently provided further illumination as to the standards that should be used to evaluate whether the totality of the circumstances warrant a finding that reasonable basis existed. *Cottingham v. Sec'y of Health & Human Servs.,* No. 15-1291V, 2017 WL 4546579, at \*10 (Fed. Cl. Oct. 12, 2017). As Judge Williams therein stated, a special master should consider "the novelty of the vaccine, scientific understanding of the vaccine and its potential consequences, the availability of experts and medical literature, and the time frame counsel has to investigate and prepare the claim." *Id.* at \*5. An impending statute of limitations deadline, however, has been removed from consideration under the "totality of the circumstances" analysis. *See Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed, Cir. 2017); *see also Amankwaa v. Sec'y of Health & Human Servs.*, No. 17-036V, slip. op. at 9-10 (Fed Cl. June 4, 2018) ("special masters must not consider subjective factors in determining whether a claim has reasonable basis[,]" and should "limit [their] review to the claim alleged in the petition . . . based on the materials submitted.") (quoting *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121, at \*7 (Fed. Cl. Spec. Mstr. Jan. 5, 2018)).

## II.    Petitioner's Claim Had Sufficient Reasonable Basis for a Fees Award

Based on my review of the case history, coupled with the evidence of counsel's course of representation of Petitioner as set forth in the billing records, I find that the claim did possess reasonable basis, despite its ultimate weakness.

In the Petition, Ms. Carrington alleged that she suffered from GBS, CIDP, and/or AIDP, as a result of receiving the Flumist vaccine on February 23, 2016. Pet. at 1-2. Record evidence establishes both her receipt of the vaccine as well as treater statements noting a concern for adverse neuropathic symptoms close-in-time to vaccine administration. *See* Ex. 1 (vaccination record); *see, e.g.*, Ex. 3 at 44 (noting an onset of weakness in lower extremities, tingling, numbness, neck pain, and radiating right shoulder pain since receiving the Flumist vaccine). Accordingly, fundamental elements of her claim at least had *some* substantiation.

A closer examination of the medical record, however, clearly indicates that Petitioner's treaters later expressed concern regarding her appropriate diagnosis. Thus, the issue of the claim's reasonable basis turns on whether the concerns regarding Petitioner's diagnosis should have been

immediately viewed by counsel as an insurmountable obstacle to the claim's viability (in addition the weak medical record evidence linking the vaccine to the symptoms she was experiencing).

Counsel maintains that prior to filing the claim, he relied on documented treater statements (along with a self-conducted scientific investigation) to support his conclusion that Petitioner experienced some form of an acute neuropathy (whether atypical GBS, CIDP, or AIDP) roughly one month following her receipt of the Flumist vaccine. *See* Brief at 2; Ex. 1 to Brief at 1-18. Indeed, various treatment records around the time of vaccination suggest that Petitioner presented to treaters with complaints (including paresthesia, numbness, and weakness) near the end of March 2016. *See, e.g.*, Ex. 3 at 44-45. Records also reveal that at least one treater considered a possible relationship between her symptom onset and her vaccination, though additional filed records could reasonably be interpreted to be recordings of Petitioner's own recollection of her injury, rather than a treater opinion proposing a causal link. *See, e.g.*, Ex. 3 at 53 ("[s]he recently had a flu vaccination"); *but see* Ex. 3 at 45-46; Ex. 5 at 62; Ex. 7 at 2; Ex. 2 at 6.

As Petitioner's disease course progressed, however, those same treaters expressed some concern regarding her appropriate diagnosis due to the lack of corroborating medical testing evidence. *See, e.g.*, Ex. 3 at 53 (March 28, 2016 neurology consult noting that GBS/AIDP should be considered, though reflexes were normal and intact), 46-49 (April 1, 2016 psychiatric consult noting GBS would be atypical as Petitioner had retained reflexes), 81-82 (April 1, 2016 neurology consult noting Petitioner's case was odd/atypical for AIDP due to normal MRI and CSF analysis). Subsequent treaters reached similar conclusions. *See, e.g.*, Ex. 5 at 52, 55 (January 3, 2017 hospital record noting March 2016 GBS/MS workup was unremarkable, resulted in normal MRI and lumbar puncture, and overall etiology was "not clear"), 68 (January 3, 2017 neurology consult listing CIDP as a differential, but noting presentation would be atypical given intact reflexes), 90 (January 11, 2017 neurology consult indicating suspected CIDP due to EBV infection, but noting reflexes were intact); Ex. 7 at 3-4 (January 26, 2017 neurology consult noting Petitioner "does not have" GBS/CIDP). Based on the above, it appears the treaters at least considered that Petitioner was suffering from some form of acute neuropathy (i.e. in the context of a working diagnosis), but never affirmatively diagnosed her with such a condition.

After consulting with a medical expert, prior counsel maintains, it was determined that Petitioner's symptoms were likely not consistent with atypical GBS (or AIDP/CIDP), but could be considered reflective of narcolepsy and/or small fiber neuropathy ("SNF"). Brief at 11. He also maintains that he received additional medical records in early January 2018 directly contradicting his initial view that Petitioner had experienced a vaccine-induced neuropathic injury. *Id.* at 15. Counsel explains that he then acted properly in notifying the court of this newly acquired information, and proceeded in an efficient manner by further assisting Petitioner in investigating these alternative diagnoses offered by the reviewing expert. *Id.*

7

Consistent with counsel's assertions, the medical records reveal some support for a diagnosis of narcolepsy (although, it does not appear a treater related that condition to her vaccination). *See, e.g.*, Ex. 2 at 6-7 (March 21, 2016 concern for narcolepsy given breathing troubles and increased sleepiness on exam); Ex. 3 at 44-45 (March 28, 2016 hospital record indicating past diagnosis and sleep study for narcolepsy). Narcolepsy is an injury that has been litigated in the Program in the past (albeit unsuccessfully at times), but could be a viable vaccine-induced injury. *See, e.g.*, *D'Toile v. Sec'y of Health & Human Servs.*, No. 15-085V, 2016 WL 7664475 (Fed. Cl. Spec. Mstr. Nov. 28, 2016), *mot. for review den'd*, 132 Fed. Cl. 421 (2017), *aff'd*, 726 F. App'x 809 (Fed. Cir. 2018). With regard to SFN, however, none of Petitioner's treaters embraced such a diagnosis, and attempts to obtain an SFN diagnosis *post-filing* of her vaccine injury claim proved unsuccessful. *See* Brief at 12.

All in all, the medical records filed in the present matter reveal some facial deficiencies with regard to portions of Petitioner's claim. The fact that Petitioner did not have a clear diagnosis at the outset, however, does not obviate the reasonable basis of her claim. The medical record evidence includes some treater statements concerning a possible relationship between the Flumist vaccine and Petitioner's presenting symptoms (alleged to have been consistent with atypical GBS, CIDP or AIDP), even if in the form of a working diagnosis. As detailed above, treaters at least *considered* Petitioner's symptoms to be supportive of some neuropathic injury initially (while at times also expressing some concern given her relevant test results). Even if such evidence looks weak in hindsight (especially given the claim's dismissal), it is enough to conclude that the case had *some* objective support for reasonable basis prior to filing. It was thus reasonable for counsel to proceed with filing the claim.

My analysis is not complete, however. I must also determine, based on the totality of the circumstances and the evidentiary showing, if counsel should receive a full award of attorney's fees through July 2018 (as requested). Well-reasoned decisions have noted that even cases that begin with reasonable basis can lose it over time, once more evidence comes in that reveals a claim's weaknesses. *See, e.g., Pannick v. Sec'y of Health & Human Servs.*, No. 16-0510V, 2016 WL 8376894, at *2 (Fed. Cl. Spec. Mstr. Nov. 8, 2016). I have ruled that reasonable basis ceased to exist for certain claims that initially had it for this very reason. *See, e.g., Curran v. Sec'y of Health & Human Servs.*, No. 15-804V, 2017 WL 1718791 (Fed. Cl. Spec. Mstr. Mar. 24, 2017); *see also Fieselman v. Sec'y of Health & Human Servs.*, No. 17-170V, 2017 WL 5398625 (Fed. Cl. Spec. Mstr. Sept. 14, 2017); *Butler v. Sec'y of Health & Human Servs.*, No. 16-1620V, 2017 WL 3811134 (Fed. Cl. Spec. Mstr. Aug. 3, 2017).

Based on my overall view of the case's progression, I find that counsel acted appropriately in attempting to represent Petitioner while taking note of my concerns about the claim's viability,

8

and properly acted once the lack of viability was evident. As the billing record reveals, Mr. Baseluos expeditiously reviewed Petitioner's claim and worked to determine its likelihood of success (via medical record review and an investigation into the scientific basis for the claim). *See generally* Fees App. He also promptly supplemented the record and consulted with a reviewing expert after filing the claim to determine which diagnoses seemed most viable. Once Petitioner's reviewing expert refuted some of the diagnoses considered in the medical record, counsel entertained additional investigation into alternate diagnoses based on that review (as supported by the record). Counsel thus relied not simply on subjective statements of the Petitioner but on actual objective record proof, while subjecting the questionable or weaker kinds of evidence to testing via expert opinion. And he sought withdrawal promptly once he determined that Petitioner's symptoms could not be related to the various diagnoses proposed herein (concerns that his own investigation and further attempts to obtain additional diagnoses could not rebut).

Overall, this case likely would have been difficult to prosecute successfully (given the weak treater support for a vaccine-induced injury, coupled with the dispute regarding Petitioner's diagnosis). The claim was therefore appropriately dismissed under the circumstances. But it has long been understood that the *success* of a claim is not determinative of the claim's reasonable basis, an inquiry which considers whether objective proof exists to support it. *See Livingston v. Sec'y of Health & Human Servs.*, No. 12-268V, 2015 WL 4397705, at *6 (Fed. Cl. Spec. Mstr. June 26, 2015) ("[a]n assessment of reasonable basis looks not to the likelihood of success but more to the feasibility of the claim" (internal quotation marks omitted)). Here, that test is satisfied, and therefore the case had sufficient reasonable basis through its dismissal for a fees award.

## III.    Calculation of Fees Award

Determining the appropriate amount of a fees award is a two-part process. The first part involves application of the lodestar method – "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down. *Avera*, 515 F.3d at 1348.

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate on the forum in which the relevant court sits (Washington, DC, for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the *Davis* exception). *Avera*, 515 F.3d at 1348 (Fed. Cir. 2008, citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)).  As the Federal Circuit stated in *Avera*, inclusion of the *Davis*

exception ensures against a "windfall" – meaning paying a lawyer in a rural or less expensive locale more than she would otherwise earn, simply because she is litigating a case in a court of national jurisdiction. *Avera,* 515 F.3d at1349. A recent special master's decision established the hourly rate ranges for attorneys of different levels of experience who are entitled to the forum rate, and it has since been relied upon more generally by the Office of Special Masters. *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

After the hourly rate is determined, the reasonableness of the total hours expended must be determined. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 205-06 (2009). This inquiry mandates consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley v. Eckerhart*, 461 U.S. 424, 437(1983).

Prior counsel asks that he be reimbursed at varying rates for work performed from 2016-2018, as detailed above; $265 for 2016; $275 for 2017; and $295 for 2018. Based on my review of the fees application, it appears that Mr. Baselous is requesting rates consistent with the prevailing rate in San Antonio, Texas. *See* Fees App. at 2. There have been recent decisions in the Program granting Mr. Baseluos the above-requested rates. *See, e.g., Hernandez v. Sec'y of Health & Human Servs.*, No. 16-1508V, 2018 WL 4391060, at *2 (Fed. Cl. Spec. Mstr. Aug. 20, 2018); *Depena v. Sec'y of Health & Human Servs.*, No. 13-675V, 2017 WL 1476240, at *3-4 (Fed. Cl. Spec. Mstr. March 30, 2017) (awarding San Antonio rates); *Saied v. Sec'y of Health & Human Servs.*, No. 12-552V, 2017 WL 1101764, at *2 (Fed. Cl. Spec. Mstr. Feb. 28, 2017). The rates requested herein are the same as those awarded to counsel in the above-cited decisions, and I will reimburse counsel at the rates requested without reduction.

Petitioner also requests that counsel be reimbursed for $3,736.00 in costs (representing the filing fee, medical records requests, mailing and postage costs, and an expert consult with Dr. Marcel Kinsbourne). Fees App. at 2. According to the fee application, Petitioner requests that Dr. Kinsbourne be compensated at a rate of $500 per hour for four hours of work (representing a total of $2,000.00 for expert services rendered). Supp. Fees App. at 18. However, I recently issued a decision awarding Dr. Kinsbourne a rate of $400 per hour for substantive work, consistent with the rates awarded him by other special maters. *See, e.g., Gowan v. Sec'y of Health & Human Servs.,* No. 16-350V, 2018 WL 1835100, at *2 (Fed. Cl. Spec. Mstr. Feb. 27, 2018); *L.M v. Sec'y of Health & Human Servs.*, No. 14-714V, 2017 WL 5382907, at * 5 (Fed. Cl. Spec. Mstr. Sept. 29, 2017); *see also Faro v. Sec'y of Health & Human Servs.*, No. 10-704V, 2014 WL 5654330, at *4 (Fed. Cl Spec. Mstr. Oct. 15, 2014). I will therefore reduce Dr. Kinsbourne's rate (consistent with my past decisions) and compensate him at a rate of $400 per hour for four hours of work

performed, resulting in an award of $1,600.00 for expert services (a total costs reduction of $400.00).

Upon my review of the billing record, the hours expended on this matter by counsel appear to be reasonable, and Respondent did not identify any entries as objectionable. Thus, I will reimburse counsel in full for his work on this matter. Additionally, apart from the requested rate for Dr. Kinsbourne, the requested litigation costs are reasonable and will be awarded in full.

## CONCLUSION

For the aforementioned reasons, I award a total of **$21,305.00** (representing $17,969.00 in attorney's fees, plus $3,336.00 in costs) as a lump sum in the form of a check payable to Petitioner's prior counsel, Michael Baseluos, Esq. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the Court is directed to enter judgment herewith.[6]

**IT IS SO ORDERED.**

Brian H. Corcoran
Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the Parties' joint filing of notice renouncing the right to seek review.